698 So.2d 306 (1997)
PPI, INC., etc., et al., Petitioners,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Respondent.
Nos. 96-3195, 96-3058 and 97-39.
District Court of Appeal of Florida, Third District.
July 30, 1997.
Rehearing Denied September 10, 1997.
*307 Rutledge, Ecenia, Underwood, Purnell & Hoffman and Harold Purnell, Tallahassee; Becker & Poliakoff, Alan B. Koslow and Ivan J. Reich, Ft. Lauderdale, for petitioners.
Lisa S. Nelson and Alexander H. Twedt, Tallahassee, for respondent.
Before SCHWARTZ, C.J., and JORGENSON and SORONDO, JJ.
JORGENSON, Judge.
In August, 1996, pursuant to the legislature's passage of Chapter 849, Florida Statutes (Supp.1996), the Division of Pari-Mutuel Wagering published proposed rules to regulate the operation of cardrooms by pari-mutuel *308 wagering permit holders. The permit holders [the tracks] challenged certain of those rules; following a formal hearing, the Division of Administrative Hearings issued the order now on appeal.
In this consolidated proceeding, greyhound racing tracks from across the State of Florida appeal from that order of the Division of Administrative Hearings; the Division of Pari-Mutuel Wagering cross appeals certain of those rulings. We affirm the order in part, and reverse in part.

I. Prohibition of Tournaments
We affirm the administrative law judge's determination that a tournament in which each player competes to win the most tournament script is a single "game," and is thus prohibited, as the winner could receive more than $10.00 in winnings in violation of Chapter 849.[1] Section 849.085(2)(a), Florida Statutes (1995), defines a "penny-ante game" as "a game or series of games of poker, pinochle, bridge, rummy, canasta, hearts, dominoes, or mah-jongg in which the winnings of any player in a single round, hand, or game do not exceed $10 in value." Section 849.086(8)(b), Florida Statutes (Supp. 1996), provides that "[t]he winnings of any player in a single round, hand, or game may not exceed $10 in value." Substantial competent evidence supports the administrative law judge's classification of the "tournament" envisioned by the tracks as a single game; under any other interpretation of the proposed rules, a tournament winner could win a pot that reached thousands of dollars in direct contravention of the intent of the pennyante commercial cardroom statute. The penny-ante statute is an exception to long-standing Florida law that prohibits all such forms of gambling; as such, it is to be strictly construed. See Samara Dev. Corp. v. Marlow, 556 So.2d 1097, 1100 (Fla.1990) ("exceptions or provisos should be strictly construed"); State v. Nourse, 340 So.2d 966, 969 (Fla. 3d DCA 1976)(statutory exceptions to general prohibitions must be "construed strictly against the one who attempts to take advantage of the exception.").

II. County Approval of Cardrooms
We affirm the administrative law judge's ruling that the Division does not have the authority to require that county commissions, when approving the establishment of cardrooms in pari-mutuel facilities, voice that approval by passage of an ordinance rather than a resolution.[2] Section 849.086(16), Florida Statutes (Supp.1996), provides:
The Division of Pari-Mutuel Wagering shall not issue any license under this section except upon proof in such form as the division may prescribe that a majority of the county commissioners in the county where the applicant for such license desires to conduct cardroom gaming has voted to approve such activity within the county. (Emphasis added.)
The proposed rule requires passage of a county ordinance to indicate approval of cardroom gaming; the statute merely empowers the Division to promulgate a rule that prescribes the form of proof that the county commission has voted to approve cardroom gaming.
The Division is not empowered to dictate how a county conducts its business. See § 125.01(1)(t), Fla. Stat. (1995) ("The legislature and governing body of the county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power includes, but is not restricted to the power to: ... [a]dopt ordinances and resolutions necessary for the exercise of its powers."). The Division exceeded the grant of legislative authority and usurped the functions of law granted to the county commissions.

III. Cardroom Occupational Licenses
We affirm the administrative law judge's approval of the Division's rules requiring pari-mutuel wagering permit applicants and cardroom employee applicants to *309 meet stringent requirements of good moral character and to complete extensive application forms.[3]
Chapter 849, Florida Statutes, requires the Division to exercise strict control over all cardroom operations; the application and screening procedures for permit holders and cardroom employees are essential to that control. See §§ 849.086(4), 550.0251(12) and (13), and 550.105(3)-(7), and (9), Fla. Stat. (giving Department broad authority to promulgate rules necessary to regulate operation of cardrooms, and allowing Division, in establishing application procedures for racetrack employees, to seek "any information [it] determines is necessary to establish the identity of the applicant or to establish that the applicant is of good moral character.").

IV. Pot Limits
The administrative law judge erroneously concluded that section 849.086(8)(b), Florida Statutes (Supp.1996), does not impose a wagering pot limitation of $10.00, and that the definition of "rake" found in section 849.086(2)(k) allows more than $10.00 to be wagered in an authorized game.[4] Chapter 849 establishes a bright line $10.00 pot limitation that preserves the legislature's intent to establish penny-ante cardroomsnot casino-style gambling facilities. The argument advanced by the tracks would seriously hamper the Division's regulatory oversight authority by allowing the pot size to be manipulated.

V. Electronic Surveillance of Cardroom Operations
We reverse the ruling of the administrative law judge that declared invalid the rule requiring cardrooms to install electronic surveillance devices to oversee cardroom operations.[5] Where an agency is granted rulemaking authority, it is granted wide discretion in exercising that authority. Department of Professional Regulation v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984). In section 849.086(4), the legislature gave the Division the authority to adopt rules regarding the operation of cardrooms; to monitor the operation of those cardrooms; and to ensure the existence of, and compliance with, internal controls and the collection of taxes and fees. At the hearing on the challenges to the proposed rules, the Division presented expert testimony that electronic surveillance of the various areas in the cardroomsparticularly the gaming tableswas appropriate. Clearly, electronic monitoring would allow the Division to oversee pot size, and monitor the conduct of players and cardroom employees.
For the foregoing reasons, we affirm in part; reverse in part; and remand for further consistent proceedings.
NOTES
[1] This portion of the opinion affirms the ruling of the administrative law judge as to proposed rules 61D-11.001(17), 61D11.005(9) and 61D-11.005(10).
[2] This portion of the opinion affirms the administrative law judge's ruling as to proposed rules 61D-11.007(1),(2) and (8) and question 10 on BPR Form 16-002.
[3] This portion of the opinion affirms the administrative law judge's ruling as to proposed rules 61D-11.008(2),(5), and (7), 61D-11.009(2) and the implementing forms BPR Forms 16-004 and 16-005.
[4] This portion of our opinion reverses the admin istrative law judge's determination that proposed rules 61D-11.001(7), 61D-11.001 (10), 61D-11.001(12), 61D-11.005(9), and 61D-11.005(11), are invalid.
[5] This portion of our opinion reverses the administrative law judge's determination that proposed rule 61D-11.012(5) is invalid.