873 So.2d 437 (2004)
Mark OSTERBACK, Appellant,
v.
John O. AGWUNOBI, Secretary of Department of Health, Appellee.
No. 1D03-1589.
District Court of Appeal of Florida, First District.
April 26, 2004.
*438 Appellant Mark Osterback, pro se, Bushnell.
Richard P. McNelis, Assistant General Counsel, Tallahassee, for Appellee.
KAHN, J.
Appellant, Mark Osterback, appeals a final order granting summary judgment in favor of appellee, as Secretary of the Department of Health (DOH or the Department). Because DOH failed to comply with the provisions of chapter 120, Florida Statutes, in repealing its rules regulating environmental conditions in prisons, we reverse.

I. Background
On September 9, 2000, appellant, a state prison inmate, filed a circuit court complaint for declaratory relief alleging that DOH unlawfully repealed Florida Administrative Code Chapter 10D-7 on February 8, 1996. He contended that the repeal of *439 chapter 10D-7, which governed health and safety conditions within correctional facilities, violated rulemaking procedures under chapter 120. Appellant alleged that the action was contrary to the statutory provisions originally implemented by the rule, and it effected an improper delegation of authority to the Department of Corrections (DOC).
DOH filed a motion for summary judgment. DOH posited that because, in its view, chapter 91-297, Laws of Florida, effective July 1, 1991, repealed the statutory authority for chapter 10D-7, the Department could not adopt or reenact the rule chapter as it had previously existed. Appellant filed a cross-motion for summary judgment, arguing that chapter 91-297 merely renumbered the statutory provision authorizing chapter 10D-7, from section 381.031(1)(g)3. to section 381.006(7) (currently section 381.006(6)). Appellant reasoned that, because the statutory authority for the chapter remained, repeal of the chapter constituted an invalid exercise of delegated legislative authority because such contravened the provisions of law originally implemented by the rule.
On February 19, 2003, the trial court entered final summary judgment for DOH. The court did not address the Department's argument regarding chapter 91-297. Instead, the trial court found that "the repeal of Chapter 10D-7 did not have the effect of creating or implementing a new rule or policy and the rule repeal is not subject to challenge." The trial court further found that the repeal of 10D-7, and the corresponding shift of responsibility to the DOC, was consistent with the obligation of DOH to "[c]ooperate with and accept assistance from federal, state, and local officials" and to "[a]dopt, repeal, and amend rules consistent with law." See §§ 381.0011(5), (13), Fla. Stat. (1995). Under this alternative holding, the trial court concluded that even if the repeal were subject to challenge, the repeal did not constitute an invalid exercise of delegated legislative authority. Each of these holdings must be reversed.

II. Rulemaking by Repeal
We first address the trial court's conclusion that Department's repeal of Chapter 10D-7 was not a rule subject to challenge. An agency's repeal of a rule is considered a rule subject to challenge when it has "the effect of creating or implementing a new rule or policy." Fed. of Mobile Home Owners of Fla., Inc. v. Fla. Manufactured Housing Ass'n, 683 So.2d 586, 591 (Fla. 1st DCA 1996). Ordinarily, a trial court's determination that the repeal of a rule did not have "the effect of creating or implementing a new rule or policy" would present a mixed question of fact and law. Review of such a determination requires that "the trial court's ultimate ruling must be subjected to de novo review, but the court's factual findings must be sustained if supported by legally sufficient evidence." N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 626-27 (Fla. 2003) (footnote omitted). The trial court's order in this case, however, contained no findings of fact as to the "effect" that repeal of chapter 10D-7 had on regulated parties. Thus, the trial court's decision is reviewable by the de novo standard because it rests entirely on conclusions of law.
The trial court essentially found that the repeal of chapter 10D-7 was not a rule subject to challenge because it did not result in the replacement of chapter 10D-7 by another DOH rule or policy. The court reached this conclusion by looking at the issue "from the perspective of DOH." This conclusion is correct only if DOH did not have a statutory duty to promulgate rules regarding the environmental conditions in prisons. As explained below, we find that *440 such a duty does exist. Therefore, the repeal of the rule was tantamount to DOH adopting the American Correctional Association (ACA) standards, employed by DOC after repeal of chapter 10D-7.
As noted above, this court held in Federation of Mobile Home Owners that the repeal of a rule which had the "effect of creating or implementing a new rule or policy" was a rule subject to challenge. 683 So.2d at 591. In reaching that conclusion, this court observed:
To constitute "rulemaking" a rule repeal is required to satisfy independently the remainder of the definition of a "rule" in section 120.52.(16): "agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency...."
Id. at 590-91. In this case, DOH, by choosing to repeal chapter 10D-7, made a statement of general applicability prescribing a new policy pertaining to environmental conditions within prisonsadoption of the ACA standards now employed by the DOC. Because, as shown below, DOH has a statutory duty to regulate prison environmental health conditions, the fact that the policy replacing chapter 10D-7 was not promulgated by DOH is irrelevant. The net effect of the repeal is the implementation of a new set of rules. Accordingly, the trial court erred by finding the repeal not subject to challenge.

III. Requirement for Statutory Rulemaking Authority
We must consider whether the repeal was unlawful. Under chapter 120, an agency engaging in rulemaking must identify both the statutory authority for the rulemaking and a statute or act to be implemented by the rulemaking. Specifically, section 120.54(7), Florida Statutes (2000), requires that:
Each rule adopted shall be accompanied by a reference to the specific rulemaking authority pursuant to which the rule was adopted and a reference to the section or subsection of the Florida Statutes or the Laws of Florida being implemented, interpreted, or made specific.
DOH emphatically argues that chapter 91-297, Laws of Florida, required the repeal of chapter 10D-7. That argument, however, is without merit. Both in its motion for judicial notice of chapter 91-297 and its motion for summary judgment in the trial court, DOH argued that section 29 of chapter 91-297 repealed the rules promulgated under the Sanitary Code. The language cited by DOH appeared in the session law as follows:
(b) This section and rules adopted hereunder may be enforced in the manner provided in s. 381.0012 381.031(3). Such rules shall be a part of the Sanitary Code of Florida created by s. 381.031(1)(g). Any person who violates this section or any rule adopted hereunder shall be punished as provided in ss. 381.0025 381.112 and 381.0061 381.411.
Ch. 91-297, § 29, at 2855, Laws of Fla. The section from which the above language was taken amends the Bottled Water Act and appears to have little or nothing to do with regulation of environmental conditions in prisons. See id. at 2853-55.
Apparently, DOH wishes us to infer that the deletion of the second sentence in the above provision requires the repeal of any rules promulgated under section 381.031(1)(g). A review of the act does not support such a conclusion. We agree that the act repealed section 381.031 in its entirety. Id., § 58, at 2876. The language in section 381.031 that granted DOH the authority to regulate environmental conditions in prisons had, however, been incorporated in the newly created section 381.006. See id. § 21, 2842-44. Both the repealed statute and the new statute required DOH to regulate sanitary practices at "all places used for the incarceration of *441 prisoners and inmates of state institutions for the mentally ill." Compare § 381.031(1)(g)3., Fla. Stat. (1989) with § 381.006(7), Fla. Stat. (1991). In fact, the staff analysis prepared for the bill states that section 381.006 was designed to consolidate DOH's authority to conduct environmental health programs and to provide rulemaking authority. See Fla. H.R. Comm. on HRS, CS/CS/HB 2545 (1991) Staff Analysis 4 (final May 10, 1991). Nothing in the staff analysis indicates that by passage of the act the Legislature intended to impact DOH's authority or duty to regulate environmental conditions in prisons.
Because DOH has failed to show that the statutory authority for regulating environmental conditions in prisons was repealed by chapter 91-297, we must consider whether DOH's originally stated basis for the repeal of chapter 10D-7 was valid. During the rulemaking procedure, DOH stated it intended to repeal chapter 10D-7 because it was duplicative of policies already in effect. DOH cited section 381.0011(13), Florida Statutes (1995), as its authority for repealing the rule. That section provides that DOH may "[a]dopt, repeal, and amend rules consistent with law." DOH did not initially identify a statute that would be implemented by repealing the rule. In a letter responding to an inquiry by the Joint Administrative Procedures Committee, DOH stated that the statute to be implemented was section 381.006(14), Florida Statutes (1995). That statute, however, concerns mobile home and recreational vehicle parks. The briefs and the record on appeal fail to show that DOH ever complied with requirement to identify the statute implemented by the repeal of 10D-7.

IV. DOH's Statutory Duty to Regulate Prison Conditions
Section 381.006, Florida Statutes (1995), states that DOH "shall conduct an environmental health program as part of fulfilling the state's public health mission." Section 381.006(6) (formerly section 381.006(7), Florida Statutes (1991)), mandates that the State's environmental health program include:
A public facilities function, including sanitary practices relating to state, county, municipal, and private institutions serving the public; ... all places used for the incarceration of prisoners and inmates of state institutions for the mentally ill; ... any other condition, place, or establishment necessary for the control of disease or the protection and safety of public health.
(emphasis added). In determining that the repeal was lawful, the trial court found, and DOH now argues, that the phrase, "all places used for the incarceration of prisoners and inmates of state institutions for the mentally ill," imposes a duty on DOH to regulate conditions in mental institutions only. In its brief, DOH asserts, "It is obvious that the words `for the mentally ill' operate under standard principles of statutory interpretation as a limitation on the preceding clause." We cannot agree. The phrase "for the mentally ill" can only be seen as modifying the word "institutions." The statute directs DOH to regulate conditions at prisons,"places used for the incarceration of prisoners,"and certain mental health institutions,"places used for ... inmates of state institutions for the mentally ill."
This conclusion is bolstered by the final phrase of section 381.006(6) which requires regulation of "any other condition, place, or establishment necessary for the control of disease or the protection and safety of the public health." To find that regulation of conditions in state institutions housing mentally ill inmates is "necessary for the control of disease or the protection and safety of the public health", but regulation *442 of conditions in prisons is not, would be illogical. Each facility houses persons who are not free to leave, and each is staffed by a large number of people who enter and leave the institution on a daily basis, interacting with the general public and the inmate population.

V. Conclusion
Section 120.52(8)(a), Florida Statutes (2000) states that where an "agency has materially failed to follow the applicable rulemaking procedures set forth in this chapter," the action constitutes an "[i]nvalid exercise of delegated legislative authority." Section 120.56(1)(c), Florida Statutes (2000), provides:
The failure of an agency to follow the applicable rulemaking procedures or requirements set forth in this chapter shall be presumed to be material; however, the agency may rebut this presumption by showing that the substantial interests of the petitioner and the fairness of the proceedings have not been impaired.
We have found that the repeal of 10D-7 was rulemaking. Accordingly, repeal of chapter 10D-7 without reference to the statute implemented by the repeal was presumptively an invalid exercise of delegated legislative authority. DOH has not attempted to overcome the presumption of invalid rulemaking by demonstrating that the failure to identify the statute being implemented did not impair appellant's substantial interests or the fairness of the proceedings. Further, the trial court made no such findings.
We REVERSE and REMAND for further proceedings consistent with this opinion.
VAN NORTWICK and LEWIS, JJ., concur.