IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

DEPARTMENT OF BUSINESS
AND PROFESSIONAL
REGULATION, DIVISION OF
PARI-MUTUEL WAGERING,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

    Appellant,

v.

CASE NO. 1D16-4275

DANIA ENTERTAINMENT
CENTER, LLC; DAYTONA
BEACH KENNEL CLUB, INC.;
JACKSONVILLE KENNEL
CLUB, INC.; MELBOURNE
GREYHOUND PARK, LLC;
BONITA-FORT MYERS CORP.;
INVESTMENT CORPORATION
OF PALM BEACH; WEST
FLAGLER ASSOCIATES, LTD.;
TAMPA BAY DOWNS, INC.;
AND TBDG, ACQUISITION,
LLC d/b/a TGT POKER AND
RACEBOOK,

    Appellees.

_____/

Opinion filed November 8, 2017.

An appeal from the Division of Administrative Hearings.
E. Gary Early, Administrative Law Judge.

Jason L. Maine, General Counsel, and Dwight O. Slater, Chief Appellate Counsel, Florida Department of Business & Professional Regulation, Tallahassee, for Appellant.

John M. Lockwood, Thomas J. Morton, and Kala Kelly Shankle of The Lockwood Law Firm, Tallahassee, for Appellees Dania Entertainment Center, LLC; Daytona Beach Kennel Club, Inc.; Jacksonville Kennel Club, Inc.; Melbourne Greyhound Park, LLC; Bonita-Fort Myers Corp.; Investment Corporation of Palm Beach; West Flagler Associates, Ltd.; and Christopher Kise, James A. McKee, and Joshua Hawkes of Foley & Lardner, LLP, Tallahassee, for Appellees Tampa Bay Downs, Inc. and TBDG Acquisition, LLC, d/b/a TGT Poker and Racebook.

WOLF, J.

Appellant, the Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering, challenges an order of an Administrative Law Judge from the Division of Administrative Hearings concluding that the Division's notice of intent to repeal Florida Rules of Administrative Procedure 61D-11.001(17) and 61D-11.002(5) was an invalid exercise of delegated legislative authority. We agree with the ALJ that the repeal had the effect of a rule. The Division has failed to challenge on appeal the ALJ's conclusion that the rule was invalid for failure to comply with section 120.54(1), Florida Statues, which governs the preparation and consideration of statements of estimated regulatory costs. We, therefore, affirm that portion of the order. However, we specifically reject the portion of the ALJ's order that concluded the Division does not have the

2

authority to repeal the rules that it previously adopted. Both sides agree that the Division has this authority.[1]

## Facts

The ALJ made extensive factual findings that have not been disputed on appeal. Appellees are all cardrooms that are regulated by the Division. As part of this oversight, cardrooms are required to submit to the Division for approval their "internal controls," which must include "[a] list of all authorized games offered for play and a description of the rules of play and wagering requirements for each game." Fla. R. Admin. P. 61D-11.019(4)(i).

In 2011, the Division began authorizing internal controls for a particular type of card game called a "designated player game." As defined by the ALJ:

> [In a] designated player game . . . a designated player plays his or her hand against each other player at the table, instead of all players competing against each other. . . . However, a designated player is not a cardroom operator.
>
> In traditional "pool" poker games, each player bets into a central pool, with the winning hand(s) among all of the players collecting from the pool of bets, minus the cardroom rake.
>
> In designated player games, each player at the table makes an individual bet, and compares their hand against the designated player's hand. If the player's hand is better than the designated player's hand, then the designated player pays the player from the designated player's stack of chips. If the designated player's hand is better than the player's hand, then the designated player collects the

---

[1] We specifically decline to address the legality of the existing rules or whether the repeal of those rules would contravene section 849.086, Florida Statutes.

3

player's wager. At an eight-seat table, it is as though there are seven separate "player versus designated player" games.

As requests to offer these games increased, the Division initiated rulemaking in order "to establish the parameters under which designated player games would be authorized." Over the course of the next several years, the Division conducted a series of rulemaking workshops and received feedback from the cardrooms, which included proposed versions of the rules. The goal of both the Division and the industry was to avoid violating the statutory prohibition against offering a "banking game," which is "a game in which the house is a participant in the game, taking on players, paying winners, and collecting from losers or in which the cardroom establishes a bank against which participants play." § 849.086(2)(b), Fla. Stat.

Ultimately, the industry suggested a version of a rule that stated the designated player cannot be required to cover all of the potential wagers that could be made by the other players. The cardrooms explained, "Multiple jurisdictions have determined a key element to a banked card game is the house requiring all wagers be covered. We propose this language to distinguish between lawful games and impermissible banked games."

In July 2014, three years after the rulemaking process began, the Division adopted two new rules that had been proposed by the cardrooms. Rule 61D-11.001(17) defines the term "designated player":

4

"Designated player" means the player identified by the button as the player in the dealer position.

Fla. R. Admin. P. 61D-11.001(17). Rule 61D-11.002(5) provides criteria for house rules:

> (5) Card games that utilize a designated player that covers other players' wagers shall be governed by the cardroom operator's house rules. The house rules shall:
>
> (a) Establish uniform requirements to be a designated player;
>
> (b) Ensure that the dealer button rotates around the card table in a clockwise fashion on a hand by hand basis to provide each player desiring to be the designated player an equal opportunity to participate as the designated player; and
>
> (c) Not require the designated player to cover all potential wagers.

Fla. R. Admin. P. 61D-11.002(5).

The Division continued to authorize designated player games through mid-2015. In October 2015, the Division published a notice of intent to repeal rules 61D-11.001(17) and 61D-11.002(5). The Division also proposed adding a new rule that would state, "Player banked games, established by the house, are prohibited."

At a public hearing in December 2015, Division director Jonathan Zachem explained the purpose of the proposed changes was to conform the rules with section 849.086, which he believed "does not allow designated player games."

After the hearing, the Division began instructing its employees not to approve internal controls for designated player games because, as one Division

5

employee testified, the Division's position had "turned around" on the issue of whether designated player games were permitted by the statute.

Also in December 2015, the Division filed a series of administrative complaints against cardrooms offering designated player games. Zachem conceded that a cardroom could have been operating in full compliance with its Division-approved internal controls and still have been the subject of an administrative complaint.

Appellees filed individual petitions challenging the validity of the proposed rule changes, and those petitions were consolidated.

The notice of rulemaking stated the Division did not prepare a statement of estimated regulatory costs (SERC) because it concluded that the proposed rules would not have a financial impact in excess of $200,000. Appellees submitted a good-faith proposal for a lower cost regulatory alternative (LCRA). They estimated that the prohibition on designated player games would cost them more than $87,000,000 over a 5-year period. The LCRA suggested that the increased regulatory cost could be avoided by not repealing the rules and instead maintaining the Division's longstanding interpretation of section 849.086 as permitting designated player games. Due to the high anticipated regulatory cost, appellees argued that the Division was required to file a SERC.

The Division published a notice of change to its proposed rulemaking. It withdrew its proposal to add a rule that would have expressly prohibited designated player games. However, the proposed repeal of rules 61D-11.001(17) and 61D-11.002(5) remained intact.

Following a formal hearing, the ALJ concluded that the proposed repeal of rules 61D-11.001(17) and 61D-11.002(5) was an invalid exercise of delegated legislative authority. The ALJ concluded that the Division director's statements at the public hearing "made it clear that the intent of the proposed amendments was to change the Division's long-standing and consistently applied construction of section 849.086 as allowing designated player games to one of prohibiting designated player games." The ALJ also found that the administrative complaints issued soon after the notice of rulemaking were "broadly worded, and reflected [the Division's] newly developed position" that designated player games constituted a banking game in violation of section 849.086.

The ALJ made a factual finding that the Division "specifically intended the amendments repealing the designated player standards to have the effect of prohibiting designated player games." "The evidence is conclusive that, by its repeal of rule 61D-11.002(5), [the Division] simply changed its mind as to whether playing with a designated player constituted the establishment of a prohibited banking game."

The ALJ concluded that the repeal of the rules met the definition of "rule" because "the proposed repeal . . . has the effect of implementing [the Division's] new policy with regard to designated player games. The policy that [the Division] seeks to implement by the rule is clearly a change in the direction of the agency since it adopted the designated player rules."[2]

The ALJ found this rule was invalid because the Division failed to materially follow rulemaking procedures by failing to file a SERC in response to the LCRA as required by section 120.541, Florida Statutes. The ALJ also found the repeal exceeded the Division's grant of rulemaking authority and enlarged, modified, or contravened the specific law implemented because the Division lacked the authority to further define or establish what is an "authorized game" beyond the definition given in section 849.086.

## I. The Proposed Repeal Was a Rule

Section 120.56(1) permits "[a]ny person substantially affected by a rule or proposed rule [to] seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority." § 120.56(1)(a), Fla. Stat. "Rule" is defined as "each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes

---

[2] The ALJ noted there was "substantial evidence" that the reason behind this change in interpretation was "related to the renegotiation of the Seminole Compact," although the reason was ultimately irrelevant.

the procedure or practice requirements of an agency . . . . The term also includes the amendment or <u>repeal of a rule</u>." § 120.52(16), Fla. Stat. (emphasis added).

"To constitute 'rulemaking' a rule repeal is required to satisfy independently the remainder of the definition of a 'rule' in section 120.52(16) . . . . A repeal that does not have the effect of creating or implementing a new rule or policy is not a 'rule' subject to challenge." <u>Fed'n of Mobile Home Owners of Fla., Inc. v. Fla. Manufactured Hous. Ass'n, Inc.</u>, 683 So. 2d 586, 590-91 (Fla. 1st DCA 1996). "'Any agency statement is a rule if it 'purports in and of itself to create certain rights and adversely affect others'. . . ." <u>Id.</u> at 591 (quoting <u>Balsam v. Fla. Dep't of Health & Rehab. Servs.</u>, 452 So. 2d 976, 977 (Fla. 1st DCA 1984)).

In <u>Federation</u>, this court found the repeal of a rule setting forth the procedures for amending documentation that must be submitted to the Department for approval was a rule because "the repeal of the rule improperly vests the agency with unbridled discretion over review and approval of amendments." 683 So. 2d at 591. Thus, the repeal "create[d] certain rights and adversely affect[ed] others." <u>Id.</u>

This court has similarly held that the repeal of a rule constituted a rule because it had the "net effect" of implementing new policies. <u>Osterback v. Agwunobi</u>, 873 So. 2d 437, 440 (Fla. 1st DCA 2004). In <u>Osterback</u>, the Department of Health (DOH) repealed a chapter in the administrative code that governed health and safety conditions within correctional facilities. <u>Id.</u> In response,

9

the Department of Corrections adopted its own policies. Id. at 440. This court concluded that "DOH, by choosing to repeal [the rules], made a statement of general applicability prescribing a new policy pertaining to environmental conditions within prisons – adoption of the . . . standards now employed by the DOC." Id. at 440. "Because . . . DOH has a statutory duty to regulate prison environmental health conditions, the fact that the policy replacing [the repealed regulations] was not promulgated by DOH is irrelevant. The net effect of the repeal is the implementation of a new set of rules." Id. at 440 (emphasis added).

Here, the rules define designated player games and set criteria for house rules for designated player games. These rules would give any reasonable person the assurance that if house rules were adopted in accordance with these criteria, designated player games would be allowed. As in Federation, by proposing to repeal these rules, the Division has sought to give itself unbridled discretion to approve or deny internal controls for designated player games. As such, the repeal adversely affected the rights of the cardrooms.

Further, similar to Osterback, the net effect of this repeal was to implement a new internal policy. The factual findings made by the ALJ established that the Division had been approving designated player games since 2011 and had promulgated the rules to clarify for cardrooms how they could offer designated player games without conducting banking games in violation of section 849.086.

10

Then, the Division repealed these rules and contemporaneously stopped approving all designated player games, and it issued administrative complaints against cardrooms offering designated player games, even those who were offering them in accordance with their Division-approved internal controls. The Division director even conceded that the Division intended the repeal to implement the new policy of prohibiting all designated player games based on the Division's new interpretation of section 849.086. Thus, the Division's actions made clear that the net effect of the repeal was to implement a new policy.

The fact that the Division withdrew its proposed rule that would have expressly prohibited designated player games does not change the fact that the repeal of the existing rules had the net effect of implementing the Division's new policy of no longer approving designated player games. As such, we find the proposed repeal constituted a rule, and thus the Division was required to follow rulemaking procedures.

## II. The Proposed Rule Was Invalid

We also find the ALJ correctly concluded that the repeal was an invalid exercise of delegated legislative authority because the Division failed to follow rulemaking procedures by failing to prepare a SERC as required by section 120.541, Florida Statutes, which is a factual finding not challenged by the Division. While an agency may change its interpretation of a statute through valid

11

rulemaking, Cleveland Clinic Florida Hospital v. Agency for Health Care Administration, 679 So. 2d 1237, 1242-43 (Fla. 1st DCA 1996), the Division failed to follow rulemaking procedures here. Thus, we affirm that portion of the ALJ's order.

However, we decline to adopt the ALJ's conclusion that the Division lacked the authority either to promulgate or to repeal rules pertaining to designated player games. The ALJ found that neither section 550.0251(12) nor section 849.086(4), Florida Statutes, which provide the Division with rulemaking authority, authorize the Division to "further define, prohibit, or limit activities authorized by statute," including designated player games. The order reasoned that the Division's "effort to restrict gameplay by the repeal of the rules, and by so doing to establish what is an 'authorized game,' is beyond the authority conferred under sections 550.0251(12) and 849.086(4)." Thus, the ALJ concluded that the repeal exceeded the Division's scope of rulemaking authority, and enlarged, modified, or contravened the provisions of law implemented.

The ALJ relied on St. Petersburg Kennel Club v. Department of Business & Professional Regulation, Division of Pari-Mutuel Wagering, 719 So. 2d 1210, 1211 (Fla. 2d DCA 1998), in which the Second District held a rule defining "poker" in the context of sections 849.085 and 849.086 exceeded the Division's rulemaking authority. The court concluded that neither section 849.086 nor section

12

550.0251(12) "state . . . that the Division shall have the authority to make rules which set forth the definition of poker." Id.

In that same case, a cardroom also challenged the Division's denial of its application for approval of three card games because the Division found the games did not meet the rule's definition of "poker." Id. at 1211. The Second District reversed the denial of the applications because they were based on the invalid rule and remanded. Id. at 1212. On remand, the Division again denied approval of the games, and the Second District affirmed, reasoning that "conformity of games specified under section 849.085(2)(a) . . . can be determined in a contested proceeding without consideration of the disavowed rule." St. Petersburg Kennel Club v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering, 757 So. 2d 1240, 1241 (Fla. 2d DCA 2000).

Here, the ALJ's reliance on St. Petersburg Kennel Club, 719 So. 2d 1210, was misplaced because that case is factually distinguishable.[3] Unlike "poker," the term "designated player game" does not denote a specific card game. Instead, "designated player" is a broad method of play; many types of poker can be played in a "designated player" manner. The record mentions Texas Hold'em and "Three" or "Tree" card poker as examples. The authorizing statutes permit the Division to

---

[3] We do not reach the question of whether St. Petersburg Kennel Club v. Department of Business & Professional Regulation, Division of Pari-Mutuel Wagering, 719 So. 2d 1210 (Fla. 2d DCA 1998), was correctly decided.

regulate a cardroom's behavior, which would include providing a basic framework for permissible play, like rules for designated player games.

The ALJ's ruling that the Division cannot provide clarity on designated player games seems to contradict the ALJ's acknowledgement that the cardrooms need clarity from the Division on this issue. In concluding that the repeal had the legal effect of a rule, the ALJ reasoned:

> For [the Division] to suggest that its repeal of the rules is a clarification, a simplification, or a reflection of the unambiguous terms of the statute, and that [appellees] should just tailor their actions to the statute without any interpretive guidance from [the Division], works contrary to the <u>role of government to provide meaningful and understandable standards</u> for the regulation of business in Florida. [The Division] cannot, with little more than a wave and well-wishes, expect regulated businesses to expose themselves to liability through their actions under <u>a statute that is open to more than one interpretation</u>, when <u>the agency itself has found it problematic to decipher the statute</u> under which it exercises its regulatory authority.

(Emphasis added).

The ALJ was correct that the role of the Division is to provide meaningful and understandable standards for cardrooms, particularly where a statute is ambiguous. Thus, it is unclear how the ALJ ultimately concluded that the Division lacked the authority to fulfill this role here, when the Division and the cardrooms have struggled for years to interpret section 849.086 in the context of designated player games. Thus, we decline to adopt the ALJ's finding that the Division's

14

attempt to clarify this issue exceeded its scope of rulemaking authority, or enlarged, modified, or contravened the relevant statutes.

In summation, we AFFIRM the ALJ's order to the extent that it held the proposed repeal was a rule and that this rule was invalid due to the Division's failure to follow rulemaking procedure, though we decline to adopt that portion of the order finding that the Division lacks the authority to repeal the rules.

OSTERHAUS and KELSEY, JJ., CONCUR.