# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2022-1477
LT Case No. 22-0968RX

_____

SOUTH MARION REAL ESTATE
HOLDINGS, LLC, d/b/a OXFORD
DOWNS, and DAROLD R.
DONNELLY,

    Appellants,

    v.

FLORIDA GAMING CONTROL
COMMISSION,

    Appellee.

_____

Administrative Appeal from the Division
of Administrative Hearings.

John M. Lockwood, Thomas J. Morton, and Devon Nunneley Baxter, of The Lockwood Law Firm, Tallahassee, for Appellants.

Ross Marshman, General Counsel, of Office of the General Counsel, Tallahassee, for Appellee.

May 17, 2024

PRATT, J.

We have for review a final order of the Division of Administrative Hearings in which the administrative law judge

("ALJ") rejected Appellants' challenge to the validity of Florida Administrative Code Rule 61D-11.005(5) (2022).[1] The rule, promulgated by the Florida Gaming Control Commission, prohibits cardroom license-holders from gambling where they work. *See* Fla. Admin. Code R. 61D-11.005(5) (2022) ("Cardroom occupational licensees are prohibited from participating in authorized cardroom games at the cardroom facility where they are employed."). The question in this case is whether the rule is an invalid exercise of delegated legislative authority. Appellants say that it is, contending that the rule exceeds the Commission's grant of rulemaking authority and that it enlarges, modifies, or contravenes the specific provisions of the law that it implements. *See* § 120.52(8)(b)–(c), Fla. Stat. (2022). The ALJ rejected their argument and concluded that the rule falls within the Commission's statutory authority to regulate cardroom operations. We affirm that determination.[2]

As the source of its authority to issue the rule, the Commission points to sections 550.0251(12) and 849.086, Florida Statutes (2022). Section 550.0251(12) provides: "The commission shall have full authority and power to make, adopt, amend, or repeal rules relating to cardroom operations, to enforce and to carry out the provisions of s. 849.086, and to regulate the authorized cardroom activities in the state." § 550.0251(12). This grant of rulemaking authority envisions that the Commission's rules will "enforce" and "carry out"—or, stated another way, implement—"the provisions of [section] 849.086." *Id.* In turn, subsections (4) and (4)(a) of section 849.086 state:

---

[1] After the Final Order in this case was entered, rule 61D-11.005(5) was transferred, without any change to the rule's language, to Chapter 75 of the Florida Administrative Code. *See* Fla. Admin. Code R. 75.11.005(5) (2023).

[2] Based on record evidence, Appellants represent that South Marion Real Estate Holdings, LLC resides within Marion County, which makes our court an appropriate appellate forum. *See* § 120.68(2)(a), Fla. Stat. (2024).

The commission shall administer this section and *regulate the operation of cardrooms* under this section and the rules adopted pursuant thereto, and is hereby authorized to . . . [a]dopt rules, including, but not limited to: the issuance of cardroom and employee licenses for cardroom operations; *the operation of a cardroom*; recordkeeping and reporting requirements; and the collection of all fees and taxes imposed by this section.

§ 849.086(4), 849.086(4)(a) (emphases added).

Appellants argue that these provisions grant rulemaking authority but fail to provide a specific power or duty that the challenged rule may implement. Therefore, they contend that the challenged rule does not satisfy section 120.52(8)'s "flush-left" paragraph.[3] Appellants are mistaken. Section 849.086(4) imposes

---

[3] The paragraph states:

A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the enabling statute.

on the Commission a specific duty to "regulate the operation of cardrooms under this section," and section 849.086(4)(a) vests it with the specific power to adopt rules relating to "the operation of a cardroom." This duty and power are appropriate objects for exercise of the rulemaking authority that section 550.0251(12) confers on the Commission.

You needn't take our word for it. As set forth above, section 550.0251(12) itself states that section 849.086 is a provision of law that the Commission will implement, and in doing so, it does not distinguish among the latter's various subsections. § 550.0251(12) ("The commission shall have full authority and power to make, adopt, amend, or repeal rules relating to cardroom operations, *to enforce and to carry out the provisions of s. 849.086*, and to regulate the authorized cardroom activities in the state." (emphasis added)). That legislative language matters. Because we deal in a domain that belongs to the Legislature, we should take at face value what section 550.0251(12) tells us about the status of section 849.086(4) and 849.086(4)(a).

"Rulemaking is a legislative function, and as such, it is within the exclusive authority of the Legislature under the separation of powers provision of the Florida Constitution." *St. Johns River Water Mgmt. Dist. v. Consolidated–Tomoka Land Co.*, 717 So. 2d 72, 77 (Fla. 1st DCA 1998); *see also* Ilan Wurman, *Constitutional Administration*, 69 Stan. L. Rev. 359, 405 (2017) ("Rulemakings regulating private conduct are (at least almost always) legislative and ought to be treated as such."). "It follows that a state administrative agency has no authority to adopt rules apart from the authority delegated to it by the Legislature." *Consolidated–Tomoka Land Co.*, 717 So. 2d at 77. Through the Florida Administrative Procedure Act ("APA") and its subsequent amendments, the Legislature established the general standards by which courts must determine the scope of the authority that the Legislature has delegated to an agency. *See generally* ch. 120, Fla. Stat. Where, as here, a statute establishes that a particular provision of law is subject to an agency's rulemaking authority, we

§ 120.52(8), Fla. Stat. (2022).

should credit that legislative choice in our interpretation and application of the APA.

If the language of section 550.0251(12) were not enough, precedent confirms that section 849.086(4) and 849.086(4)(a) impose a duty and a power that the Commission's rules may implement. The Third District has held that section 849.086(4) was the law implemented in a valid rule requiring surveillance devices in cardrooms. *See PPI, Inc. v. Dep't of Bus. & Prof'l Reg., Div. of Pari-Mutuel Wagering*, 698 So. 2d 306, 309 (Fla. 3d DCA 1997). Even more instructive, the First District likewise has pointed to section 849.086(4) as a law that agency rules may implement, observing that the statute permits an agency "to regulate a cardroom's behavior, which would include providing a basic framework for permissible play." *Dep't of Bus. & Prof'l Reg., Div. of Pari-Mutuel Wagering v. Dania Ent. Ctr., LLC*, 229 So. 3d 1259, 1266 (Fla. 1st DCA 2017). To the extent that a particular subsection empowers the Commission "to regulate a cardroom's behavior" as such, *id.*, it would appear to be subsection (4)(a). Indeed, in an analogous context, the First District has concluded that the "specific duties" to "supervise, administer, regulate, and control the operation of all public parks" provided a legitimate basis for agency rulemaking. *See Frandsen v. Dep't of Envtl. Prot.*, 829 So. 2d 267, 269 (Fla. 1st DCA 2002) (per curiam). The Commission's duty to "regulate the operation of cardrooms," § 849.086(4), fits within that same mold.

Appellants observe that the Second District invalidated an agency rule that defined the game "poker." However, the Second District did not squarely foreclose the premise that section 849.086(4)(a) can serve as the specific law that a rule implements; it held only that section 849.086(4)(a) did not provide authority for the rule at issue in that case. *See St. Petersburg Kennel Club v. Dep't of Bus. & Prof'l Reg., Div. of Pari-Mutuel Wagering*, 719 So. 2d 1210, 1212 (Fla. 2d DCA 1998).[4]

---

[4] We recognize that our affirmance may be difficult to square with the Second District's analysis in *St. Petersburg Kennel Club*, which noted, in part, that section 849.086 does not state the Commission "shall have the authority to make rules which set forth the definition of poker." 719 So. 2d at 1211. This framing of

For the reasons explained above, section 849.086(4) and 849.086(4)(a) may serve as the specific law implemented in a rulemaking by the Commission, and the challenged rule thus satisfies section 120.52(8)'s "flush-left" paragraph. And here, the challenged rule falls within the Commission's grant of rulemaking authority to implement section 849.086. *See* § 120.52(8)(b). Whatever the reach of the Commission's duty and power to regulate cardroom operations, surely it includes the questions whether cardroom personnel may participate in authorized cardroom games at their place of employment, and under what circumstances they may participate. *Cf. Escambia Cnty. Sch. Bd. v. Warren*, 337 So. 3d 496, 501 (Fla. 1st DCA 2022) (Tanenbaum, J., concurring in result) ("[T]here are few functions more closely associated with the operation, control, and supervision of schools than the management of their personnel.").

That the challenged rule falls within the Commission's grant of rulemaking authority does not end our inquiry; we still must determine whether the rule strays beyond the implemented statute's bounds. *See* § 120.52(8)(c). Appellants argue that the rule enlarges, modifies, or contravenes section 849.086 because the statute does not authorize the Commission to prohibit cardroom occupational licensees from participating in their own cardroom games. They note that other subsections of the statute speak to the question of who may participate in cardroom games. As Appellants observe, minors are categorically barred from participating, § 849.086(12)(b), and, subject to certain non-

_____

the issue stands in tension with the First District's observation that "[t]he question is whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific *enough*." *Sw. Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc.*, 773 So. 2d 594, 599 (Fla. 1st DCA 2000). In any event, as with the rule at issue in *Dania Entertainment Center*, the rule at issue in this appeal is distinguishable, and therefore we need not "reach the question whether [*St. Petersburg Kennel Club*] was correctly decided." 229 So. 3d at 1265 & 1266 n. 3. Thus, our decision today does not present a direct conflict with the Second District's decision in *St. Petersburg Kennel Club*.

6

discrimination requirements, the statute empowers cardroom operators to "refuse to allow any person who is objectionable, undesirable, or disruptive to play," § 849.086(7)(g). Finally, the statute requires cardroom operators to provide nonplaying dealers for certain games, specifying that such dealers "may not have a participatory interest in any game other than the dealing of cards and may not have an interest in the outcome of the game." § 849.086(7)(c).

As Appellants see it, this statutory scheme provides an exhaustive list of who is (or may be) prohibited from participating in cardroom games, and the Commission's rule impermissibly adds to that exhaustive list. In other words, Appellants call for application of the negative-implication canon. While this argument has superficial appeal, it falters under scrutiny.

"Context establishes the conditions for applying" the negative-implication canon, *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of others"). Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). "The doctrine properly applies only when . . . the thing specified[ ] can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." *Id.* And "[e]ven when an all-inclusive sense seems apparent, one must still identify the scope of the inclusiveness (thereby limiting implied exclusion)." *Id.* at 108.

The contextual elements of section 849.086 do not imply a limitation on the Commission's authority to restrict cardroom licensees from gambling where they work. The exclusion of minors from cardroom games, § 849.086(12)(b), addresses an often-protected segment of the public whose youth and vulnerability make it categorically inappropriate for them to gamble in cardrooms, irrespective of time or place. The prohibition fairly implies that the Commission cannot restrict *all* adults from cardroom games under *all* circumstances, but it does not imply that the Commission cannot bar *certain* adults—members of the regulated industry, no less—under *certain* circumstances. And indeed, the statute recognizes that certain adults are not appropriate cardroom players, empowering cardroom operators to exclude prospective adult patrons on several enumerated bases.

§ 849.086(7)(g). Appellants would have us infer from that provision that the statute removes the Commission's authority to bar licensees from gambling at their workplaces, but again, they overstate the scope of the implied exclusion. Section 849.086(7)(g) concerns a common feature of houses of vice: the *proprietor's* need to exclude unruly patrons. Perhaps the provision might fairly imply that *cardroom operators* may not exclude prospective patrons on bases other than those enumerated, but it implies nothing about the Commission's regulatory authority. Much less does the provision imply that it takes a key component of cardroom operations outside the Commission's purview, only to place it in the hands of the regulated parties in a "strictly regulate[d]" industry. § 849.086(1). Finally, the requirement that cardroom operators provide non-playing dealers for certain games, *see* § 849.086(7)(c), might fairly imply that the operators have no statutory duty to provide non-playing dealers for other games. But it says nothing more generally about when cardroom employees may participate in their workplace's cardroom games, much less whether the *duty* that it places on *operators* should imply any limitation on the Commission's regulatory authority.

Stated plainly, the Legislature has obligated and empowered the Commission to adopt rules regulating cardroom operations, the challenged rule implements section 849.086(4) and 849.086(4)(a) by regulating a core aspect of cardroom operations, and section 849.086's other scattered provisions do not imply a restriction on the Commission's authority to prohibit licensees from gambling at their workplaces. The ALJ correctly concluded that the challenged rule regulates an aspect of cardroom operations and does not enlarge, contravene, or modify section 849.086.

Appellants, then, are left to argue that the Commission's duty and power to regulate cardroom operations are not specific enough. They assert that, if the Commission "has 'open-ended' authority to adopt any rule related to cardroom operations," then "it would have unrestricted discretion in implementing section 849.086." But as the ALJ correctly concluded, in this APA challenge to an agency's exercise of delegated legislative authority, the questions we must ask are whether the rule "has exceeded [the Commission's] grant of rulemaking authority" and whether "[t]he rule enlarges, modifies, or contravenes the specific provisions of

law implemented." § 120.52(8)(b)–(c). Appellants' APA challenge does not pose the question whether the grant of rulemaking authority and the provisions of law implemented are specific enough. "[A]uthority for an administrative rule is not a matter of degree. The question is whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific *enough*. Either the enabling statute authorizes the rule at issue or it does not." *Save the Manatee Club*, 773 So. 2d at 599; *see Fla. Elec. Comm'n v. Blair*, 52 So. 3d 9, 11–13 (Fla. 1st DCA 2010) (recognizing that *Save the Manatee Club* continues to provide a correct interpretation of section 120.52).[5]

To the extent that Appellants' specificity argument sounds in non-delegation rather than invalid exercise of delegated legislative authority, they did not assert a non-delegation challenge below. Appellants have challenged the rule, not the statutes upon which the Commission relied in promulgating it. *Compare, e.g.*, *Sloban v. Fla. Bd. of Pharm.*, 982 So. 2d 26 (Fla. 1st DCA 2008). Our decision means that the Commission had statutory authority to issue the challenged rule. But it cannot and does not speak to the question whether that statutory authority sufficiently cabins agency discretion to avoid non-delegation concerns, as that question is not before us. *See Askew v. Cross Key Waterways*, 372 So. 2d 913, 925 (Fla. 1978) (observing that our state constitution empowers the Legislature, rather than administrative agencies, to make

---

[5] The principle that statutory authority for administrative rules is not a matter of degree has been a consistent theme of decisions construing the Florida Administrative Procedure Act throughout its various revisions. *See, e.g.*, *Fla. Dep't of Bus. & Prof'l Reg., Div. of Pari-Mutuel Wagering v. Inv. Corp. of Palm Beach*, 747 So. 2d 374, 379–80, 384 (Fla. 1999) (approving quoting and citing the First District's decision in *St. Johns River Water Management District v. Consolidated–Tomoka Land Co.*); *St. Johns River Water Mgmt. Dist. v. Consolidated–Tomoka Land Co.*, 717 So. 2d 72, 79 (Fla. 1st DCA 1998) (interpreting a prior version of section 120.52, and concluding it "unlikely that the Legislature intended to establish a rulemaking standard based on the level of detail in the enabling statute, because such a standard would be unworkable").

"fundamental and primary policy decisions"). Appellants did not bring that case, and we do not decide it.

For the foregoing reasons, we affirm the final order of the Division of Administrative Hearings.

AFFIRMED.

WALLIS and KILBANE, JJ., concur.

––––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––––